# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Apr 25 2018, 9:36 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brandon E. Murphy
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Katie J. Love,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 25, 2018<br><br>Court of Appeals Case No.<br>38A02-1706-CR-1455<br><br>Appeal from the Jay Superior Court.<br>The Honorable Max C. Ludy, Jr.,<br>Judge.<br>Trial Court Cause No.<br>38D01-1612-CM-0282 |

**Darden, Senior Judge**

# Statement of the Case

Katie Love (Katie) was convicted of possession of paraphernalia[1] as a Class C misdemeanor. She appeals after her bench trial contending that there is insufficient evidence to support that conviction. We affirm.

# Issues

The issues Katie presents for our review are as follows:

I.   Whether there was sufficient evidence admitted at Katie's bench trial to establish beyond a reasonable doubt that she was in constructive possession of paraphernalia she intended to use to introduce a controlled substance into her body; and

II.  Whether the trial court abused its discretion and violated Katie's Fifth and Sixth Amendment rights by considering inadmissible hearsay evidence outside the record.

# Facts and Procedural History

Pennville Town Marshal Keith Farmer was dispatched on the evening of November 23, 2016, to the scene of a church at the intersection of Highway 1 and Highway 26, approximately three miles south of Pennville, Indiana, in Jay County. A person had reported that there was a car in the parking lot with several occupants inside who were nonresponsive. Farmer immediately proceeded to the location indicated by the report.

---

[1] Ind. Code § 35-48-4-8.3(b)(1) (2015).

[4] Upon arriving, Town Marshal Farmer found two cars in the parking lot of the church. One car belonged to the person who had contacted dispatch. Farmer approached the driver's side door of the other car and observed a female driver, a female front-seat passenger, and a male passenger in the back seat behind the front-seat passenger. All three occupants appeared to be passed out or asleep and the car's engine was still running. Katie was the female in the front seat on the passenger side. Farmer described the interior of the car as having a bench seat in the back and two bucket seats in the front. He could not determine whether the car was in park or was in drive when he first approached it.

[5] Farmer knocked on the driver's side window, but none of the car's occupants responded. One of the car doors was unlocked. When Farmer opened the door, the interior lights of the car came on and the driver, Sandra Love, woke up first. After asking Sandra if she was alright, he noticed that the front-seat passenger, Katie, awoke. A few seconds later, the passenger in the back seat behind Katie, Blake Hall, awoke. The car was registered to Sandra Love.

[6] Farmer asked Sandra Love to turn the car's engine off. Because of her condition, however, she was unable to do so. Farmer then reached inside the car, verified that the car was in park, turned off the ignition, and took the keys.

[7] Farmer became suspicious that criminal activity had been going on when he observed a glass pipe, which appeared to have some type of residue in it, on the center console near the gear shift of the car between Sandra and Katie. Farmer had already called for medics and continued talking to Sandra to determine her

condition. Farmer did not remove any of the occupants from the car, as he awaited the arrival of the medics on the scene.

[8] Medics arrived within a few minutes of his call for assistance. As the medics unpacked their gear, Farmer assisted Sandra in exiting the car. He described her condition as being unable to stand without assistance, she had to lean against the car, and she could not walk. He testified that she appeared to be very intoxicated.

[9] Once the medics began attending to Sandra, Farmer then approached Katie. According to Farmer, Katie was also intoxicated and disoriented. She was sweating, her eyes were half-closed and glassy, and her speech was slow and slurred. He testified that she was able to somewhat follow what he was saying and engaged in limited conversation with him to a certain extent but not fully. He further testified that it did not appear that she understood why he was there.

[10] As Farmer was helping Hall exit from the back seat of Sandra's car, he noticed another glass pipe between Hall's feet on the floor of the car. Farmer testified that he discovered a bag containing a substance that looked like marijuana, but was different, "on Mr. Hall's person." Tr. p. 16. Over the objection of counsel for Katie as being irrelevant to her charges, the trial court allowed Farmer to testify as to the full extent of the facts and circumstances surrounding his investigation which included his testimony that he discovered a second, much larger, bag of the substance in the crotch area of Hall's pants between his underwear and pants. *Id.*

[11] Katie was released at the scene. Sandra was transported to the hospital and Hall was arrested. The probable cause affidavit pertinent to charges filed against Sandra and Hall, which was not admitted at Katie's trial, is included in the record on appeal for the charges against Katie only because it was referred to in the trial court's Order on trial and is the basis of support of Katie's allegation of reversible error. The probable cause affidavit includes the following information: "[Hall] stated that the material in the bags was 'spice'." Appellant's App. Vol. II, p. 10.

[12] On December 5, 2016, the State charged Katie with one count of Class B misdemeanor public intoxication and one count of Class C misdemeanor possession of paraphernalia. At the conclusion of Katie's bench trial, wherein, Farmer was the only witness to testify, the trial court found Katie guilty of the lesser offense, possession of paraphernalia, but not guilty of public intoxication, the more serious offense.

[13] We note that in a criminal case the trial court is not required to make either findings of fact or conclusions of law. *Dozier v. State*, 709 N.E.2d 27, 30 (Ind. Ct. App. 1999) (citing *Nation v. State*, 445 N.E.2d 565, 570 (Ind. 1983)).

[14] Specifically, the trial court's "Order on Trial" included the following findings:

> 3. All three (3) individuals were impaired, and they were intoxicated, in the opinion of Pennville Town Marshal, Keith Farmer.
>
> 4. According to Blake Hall, a substance found in the vehicle was "spice[.]"
>
> . . . .

6. A fair inference from the evidence is that all three (3) individuals were intoxicated from the smoking of "spice".

7. A search of the vehicle disclosed a glass smoking pipe on the front seat console, and another glass pipe was on the backseat floor.

8. The evidence presented gives rise to the inference that all three (3) of the individuals had used the glass pipes in order to ingest the "spice".

*Id*. at 28.

# Discussion and Decision

Katie waived jury trial and the matter was submitted to the trial court in a bench trial. There is a strong presumption that the trial court knows the law, and will consider only properly admitted evidence in reaching its decision. *See, Dumas v. State*, 803 N.E.2d 1113, 1121 (Ind. 2004); *Moran v. State*, 622 N.E.2d 157, 159 (Ind. 1993).

Katie now appeals contending that the evidence is insufficient to establish, beyond a reasonable doubt, that she possessed paraphernalia intended for use to introduce a controlled substance into her body. Ind. Code § 35-48-4-8.3(b)(1). Upon review of a challenge to the sufficiency of the evidence, we consider only the evidence introduced during trial and reasonable inferences most favorable to the convictions, neither reweighing evidence nor reassessing witness credibility. *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). We will affirm the judgment unless no reasonable factfinder could find the defendant guilty. *Id.*

[17] To establish that Katie committed possession of paraphernalia, the State was required to prove beyond a reasonable doubt that she knowingly or intentionally possessed an instrument, a device, or another object that she intended to use for introducing a controlled substance into her body. Ind. Code § 35-48-4-8.3(b)(1).

[18] Possession can be either actual or constructive. *Sargent v. State*, 27 N.E.3d 729, 732-33 (Ind. 2015). Actual possession occurs when a person has direct physical control over the item. *Id*. If the State cannot show actual possession, it may nonetheless prevail on proof of constructive possession. *Id*. "A person constructively possesses [an item] when the person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it." *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011) (citing *Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *modified on reh'g*, 685 N.E.2d 698 (Ind. 1997)).

[19] It is undisputed that the evidence herein establishes that the glass pipe located on the center console of the car between the driver and Katie was within her reach. Therefore, it is reasonable to assume that she could have exercised dominion and control over the glass pipe. Further, without objection, Marshal Farmer testified that in his experience in law enforcement, glass pipes such as the one he observed are used to ingest marijuana, or substances bearing similar characteristics as marijuana, such as spice. Given Katie's proximity to the glass pipe in the center of Sandra's car, in addition to Katie's physical condition as

described by Farmer, the trial court could reasonably infer that she had ingested an illicit substance or intended to do so.

[20] Alone mere possession of paraphernalia, when a statute requires evidence of intent, is not sufficient to establish that crime without additional evidence of intent. *Sluder v. State*, 997 N.E.2d 1178, 1181 (Ind. Ct. App. 2013). "The intent to introduce a controlled substance into one's body may be inferred from circumstantial evidence." *Id*. Evidence of the character of the instrument or instruments alone cannot sustain the element of intent. *McConnell v. State*, 540 N.E.2d 100, 102 (Ind. Ct. App. 1989).

[21] Farmer's unchallenged testimony as to his training and experience as a law enforcement officer and that he had encountered glass pipes before, which are typically used to ingest marijuana or other illegal substances was admitted into evidence. Farmer additionally testified that in his experience in law enforcement he had encountered marijuana and spice before. He stated that the substance he found in the bags had "the appearance, the characteristics of synthetic cannabinoids or spice." Tr. p. 15.

[22] Katie argues that the evidence is insufficient because the lab reports for the substances recovered from Hall's possession were not admitted into evidence and that the glass pipes were not sent for testing of the residue found therein. A similar argument was presented in *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied.* In *Boggs*, the defendant argued that his conviction should be reversed because there was no direct evidence of the chemical

makeup or identification of the substances because there was no testing by the Indiana State Police Laboratory. In *Clifton v. State*, 499 N.E.2d 256, 258 (Ind. 1986), a case discussed in *Boggs*, our supreme court held that the identity of a drug can be proved by circumstantial evidence. The supreme court further elaborated in a case also discussed in Boggs, *Vasquez v. State*, 741 N.E.2d 1214, 1216-17 (Ind. 2001), that someone sufficiently experienced with a drug may establish its identity, as may other circumstantial evidence. The court noted, however, that chemical analysis, although one way, is perhaps the best way to establish the identity of the substance. *Id.* at 1216.

[23] In the present case, while it might have been better for the State to have presented evidence of testing by the Indiana State Police Laboratory, and wherein it may have been better for the trial court not to have referred to Hall's statement made to Marshal Farmer upon being arrested, such does not warrant reversal in this case. "[I]n a criminal case the trial court is not required to make either findings of fact or conclusions of law." *Dozier v. State*, 709 N.E.2d 27, 30 (Ind. Ct. App. 1999) (citing *Nation v. State*, 445 N.E.2d 565, 570 (Ind. 1983)).

[24] In this case, taking into consideration the totality of the undisputed facts and circumstances and the evidence presented during the course of trial, also while acknowledging that there is a strong presumption that the trial court knows the law and that the trial court would apply it properly, we consider the trial court's reference to Hall's statement to Farmer in the context in which it was admitted at trial was superfluous and had no effect on the trial court's decision that the

State has established with independent evidence the elements of the offense with which Katie was charged beyond a reasonable doubt.

## Conclusion

In light of the foregoing, we affirm the trial court's judgment.

Mathias, J., and Crone, J., concur.